**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1396-24

QUANTIS GOOD,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted May 12, 2026 – Decided July 24, 2026

Before Judges Sumners and Susswein.

On appeal from the New Jersey Department of Corrections.

Quantis Good, self-represented appellant.

Jennifer Davenport, Attorney General, attorney for respondent (Deborah E. Wassel, Assistant Attorney General, of counsel; Eric Intriago, Deputy Attorney General, on the brief).

PER CURIAM

New Jersey State Prison inmate Quantis Good appeals the Department of Correction's (DOC) August 7, 2024 final agency decision upholding institutional disciplinary sanctions for committing the prohibited act of engaging in a group demonstration or work stoppage. After reviewing the record in light of governing legal principles, we affirm. The DOC's findings are amply supported by credible evidence in the record, including video evidence of the incident. The record also belies Good's contentions that his due process rights were violated.

I.

We discern the following pertinent facts from the record. On May 23, 2024, Good and about twenty-six other New Jersey State Prison inmates were working in the cookhouse area of the prison. Due to an unrelated security incident, the prison was placed on lockdown, and the cookhouse workers were advised by the area supervisor, Sergeant Perez, that because of the lockdown, they could either return to their cells without taking a shower or continue working and shower later. The cookhouse workers indicated they desired to continue working, but after a dispute with Sergeant Perez about whether they would in fact receive showers later, they ultimately refused to work. A specialized corrections team was then called in to extract the noncompliant inmates.

2

Good and other cookhouse workers moved various water containers to strategic areas of the cookhouse. When the specialized corrections team entered, Good and others simultaneously spilled the containers of water on the floor in an effort to impede the team by making the area slippery. These events were captured on surveillance video.

Good was charged with a *.253[1] violation, engaging in or encouraging a group demonstration or work stoppage. The initial hearing date was postponed to obtain video footage of the incident and for officers to provide supplemental reports. On June 10, 2024, a disciplinary hearing was convened at which Good, through his counsel substitute, pleaded not guilty, provided a written statement for the record, and viewed the video of the incident. In his defense, Good claimed he had intended to use the water only on his face to combat the effects of any mace the specialized team might use and that he did not intend to interfere with the team. Good admitted that after the specialized team entered, he "poured [his] water out."

Good declined to present or confront witnesses, even after Disciplinary Hearing Officer (DHO) Cortes advised Good and his counsel substitute

---

[1] Under the DOC's regulations on inmate discipline, N.J.A.C. 10A:4-4.1, "[a]sterisk offenses" are prohibited acts considered to be the most serious violations, resulting in the most severe sanctions.

numerous times of their right of confrontation. Good and his counsel substitute declined each time, responding that DHO Cortes would "still . . . find [Good] guilty."

DHO Cortes viewed the video recordings of the incident and reviewed three officers' reports, which had been prepared with the aid of the video recordings because no officers had been in the room during some of the relevant events. DHO Cortes found Good guilty and sanctioned him to 180 days' loss of commutation time, 120 days in the restorative housing unit, and 180 days' loss of privileges.

On June 13, 2024, Good administratively appealed the guilty finding, arguing it was improper to allow officers to review the video footage of the incident and subsequently provide supplemental reports. Good also argued the video footage exonerated him because he was seen neither speaking nor meeting with anyone.

In its August 7, 2024 final decision, the DOC upheld the DHO's decision, noting "all reports were reviewed" and that there was "substantial evidence against" Good. The DOC also noted there was compliance with the administrative code, "which prescribes procedural safeguards," and "there were no issues" with "the DHO process."

A-1396-24

This appeal followed. Good raises the following contentions for our consideration:

POINT I

THE DECISION OF THE DISCIPLINARY HEARING OFFICER WAS ARBITRARY AND CAPRICIOUS SINCE THE EVIDENCE DID NOT SUPPORT A GUILTY FINDING OF THE INFRACTION.

A. Appellant's Due Process Rights under Wolff v. McDonnell, 418 U.S. 539 (1974)[,] and Avant v. Clifford, 67 N.J. 496, 530 (1975)[,] were violated during the Courtline proceedings.

II.

The scope of our review of a DOC final agency decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). The deference we accord to the DOC recognizes that "[p]risons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 584 (App. Div. 1999). Accordingly, we "defer to an agency decision and do not reverse unless it is arbitrary, capricious or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010).

A-1396-24

An adjudication of guilt of an infraction must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa, 414 N.J. Super. at 192 (quoting In re Pub. Serv. Elec. & Gas, 35 N.J. 358, 376 (1961)). The term has also been defined as "evidence furnishing a reasonable basis for the agency's action." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 562 (App. Div. 2002). "[W]here there is substantial evidence in the record to support more than one regulatory conclusion, it is the agency's choice which governs." Murray v. State Health Benefits Comm'n, 337 N.J. Super. 435, 442 (App. Div. 2001) (internal quotation marks and citations omitted).

Prison disciplinary hearings are not criminal prosecutions, and thus, the full spectrum of rights afforded to criminal defendants do not apply. Avant v. Clifford, 67 N.J. 496, 522 (1975). Prisoners facing disciplinary sanctions are nonetheless entitled to certain procedural protections, which our Supreme Court prescribed in Avant. Id. at 525-29. These procedural requirements, which have since been codified in regulations, include notification of the disciplinary hearing, a right to a fair tribunal, a limited right to call witnesses and present evidence, a limited right to cross-examine adverse witnesses, a right to a written statement of the evidence relied upon and the reasons for the sanctions imposed,

6

and the assistance of counsel-substitute for certain offenses. See N.J.A.C. 10A:4-9.2; 10A:4-9.12 to .15; 10A:4-9.24. These regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." Williams v. Dep't of Corr., 330 N.J. Super. 197, 203 (App. Div. 2000) (citing McDonald v. Pinchak, 139 N.J. 188, 202 (1995)).

We are satisfied that all the procedures employed in this case complied with Good's due process rights. We need only briefly address Good's novel contention that his rights were violated by allowing officers not present for the incident to review the video recordings of the events in question before preparing supplemental reports that were introduced at the hearing. Good cites to no precedent and offers no explanation for why that procedure violated his rights, especially considering that he was offered—and declined—the opportunity to cross-examine witnesses and thereby highlight that they were not present for the incident.

We agree with the Attorney General that allowing the officers to view the video recordings and then prepare reports was necessary in this case because of the large number of inmates involved in the incident. If anything, this practice ensured the accuracy of the testimonial evidence presented at the hearing. We

A-1396-24

emphasize that while Good did not exercise the right to cross-examine the report writers, the right of confrontation offered to him addresses any concerns about allowing an officer to review video evidence before preparing a report.

We are likewise unpersuaded by Good's argument that Sergeant Caldwell should not have been allowed to investigate the matter for the disciplinary hearing because he prepared the initial charges. The record belies that contention, as Sergeant Cancellieri, not Sergeant Caldwell, conducted the investigation, which mostly consisted of reviewing the video footage. Sergeant Cancellieri signed the investigator's signature page.

Furthermore, even accepting that Sergeant Caldwell participated in the investigation by reporting information from other officers or gathering materials related to the incident after its occurrence, nothing in the regulatory framework precluded Sergeant Caldwell from performing those roles. Good's reliance on N.J.A.C. 10A:4-9.5(b) for the proposition that Sergeant Caldwell was prohibited from acting as an "investigating officer" is misplaced. That regulation forecloses a person who was "involved in the particular incident to be investigated" from being an investigating officer. Nothing in the record indicates that Sergeant Caldwell was involved in the incident on May 23, 2024.

Relatedly, Good's contention that Sergeant Caldwell was a witness because he was the "reporting employee" on the initial disciplinary report is incorrect. Nothing in that document—which is simply notice of a charge and is not itself evidence that can be considered in a hearing—indicates that Sergeant Caldwell was, or claimed to be, a witness to the demonstration/work stoppage.

At bottom, Good received a hearing before an impartial decision maker regarding the charges; the opportunity to see the evidence and witnesses upon which the DOC relied; services of a counsel substitute; an opportunity to confront and cross-examine adverse witnesses; and an opportunity to present evidence in his defense. In these circumstances, we find no violation of his due process rights.

Furthermore, substantial credible evidence supports the DOC's finding that Good committed a *.253 violation. As we have noted, the evidence shows that DOC officials ordered Good and the other cookhouse workers to continue working, but numerous inmates including Good refused. Instead of working, Good and the other noncompliant inmates "sat together devising a plan and then began to order the other inmates to do what they said." Good and the other noncompliant inmates then "dump[ed] the water out of the water jugs on the mess hall making the area slippery for the response team." As we have noted,

A-1396-24

Good in his written statement admitted that after the specialized team entered, he "poured [his] water out."

Finally, and perhaps most importantly in terms of substantial credible evidence, the DHO viewed the video recordings at the hearing, confirming Good's participation in the demonstration/work stoppage.

To the extent we have not specifically addressed them, any remaining arguments raised by Good lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10